IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDIE L. MALLORY,

       Plaintiff,

v.                                                                                         CIV 10-119-GBW

SOCIAL SECURITY ADMINISTRATION,
Michael J. Astrue, Commissioner,

       Defendant.

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Plaintiff's Motion to Remand.  *Doc. 17*. Having carefully considered the record and reviewed the parties arguments as well as the applicable law, I recommend that the motion be granted and the action remanded to the Commissioner to properly perform steps 4 and 5.

### I.  Introduction

Plaintiff Lindie Mallory filed for disability benefits on November 30, 2005 due to the alleged impairments of spinal injuries, nerve damage, high blood pressure, ADHD, post traumatic stress disorder, suicidal tendencies, phobias, and a cyst on her sciatic

nerve. *AR* at 90. At that time, she was forty-three years old. *See AR* at 18, 135, 435.[1] She alleges a disability as of the same date: November 30, 2005. *AR* at 36, 91.

Treatment notes reveal that Claimant's complaints of pain and back and neck problems originated with a fall in 2001. *AR* at 391, 404. A medical provider with University Hospital noted that Claimant had had numerous complaints of pain between 2001 and 2005 and explained: "In 2001 she had a neck and back injury where she fell off a counter at work when she was vacuuming a pie and she fell and hit her head on the floor." *AR* at 391. The fall knocked her unconscious. *Id*. She experienced increased trouble with pain arising from a car accident in 2003. *AR* at 198, 393. A treatment note from University Hospital explained that "[s]he has a history of back pain since a motor vehicle accident in August 2003." *AR* at 198. She sustained broken ribs and broken nose in the car accident. *AR* at 393. She was seen by University Hospital providers for pain, among other things, several times in 2006-2007 as well. *See e.g. AR* at 148, 155, 178, 180-86, 198, 287. She then had another car accident in September of 2007 that further exacerbated her pain. *See AR* at 117, 119, 127, 135, 397, 438. Medical providers have

---

[1] The Administrative Record is inconsistent regarding Plaintiff's exact date of birth. The ALJ reported her date of birth as 6/2/1962 (*AR* at 18), at least one health care provider recorded her birth date as 6/4/1962 (*see AR* at 135), and Plaintiff testified that her date of birth was 6/1/1962. *AR* at 435. While the conflicting evidence on what should be a basic and noncontentious fact is troubling, this Court notes that the precise date of birth is not needed for this analysis. Under the circumstances of this case, it is enough that the Court knows Plaintiff was born in June of 1962.

also noted Claimant's difficulty with high blood pressure. *See e.g. AR* at 148, 149, 151, 198, 376.

Claimant has also been seen for depression, anxiety, PTSD, agoraphobia, insomnia, and suicidal tendencies. *See e.g. AR* at 160, 161, 163, 164, 167, 169-171, 239, 241, 248, 249, 252, 255, 260, 261, 262, 367. It appears Claimant's mental difficulties have had root in a long history of abuse. Her mother tried to kill her via asphyxiation from a gas stove as a child. *See AR* at 248, 256, 262. Her uncle physically and sexually abused her. *AR* at 262. Sometime in the nineties she sustained a gunshot wound to her left lung under circumstances that are unclear in the record but may have been an accident. *AR* at 148, 241, 251, 393. She also reported being physically, sexually, and emotionally abused by her ex-husband. *AR* at 164, 249, 261, 262. It also appears that her ex-husband paralyzed her child by either running over him or crashing a truck with the child inside, for which she served three years in prison for felony child endangerment. *AR* at 167, 249, 251, 262, 446. Claimant also has a long history of multi-substance abuse. *See e.g. AR* at 148, 149, 287, 377, 378, 391, 392, 414.

Disability insurance was denied on February 10, 2006, and again upon reconsideration on August 24, 2006. *AR* at 13. Plaintiff then requested a hearing and was given one on October 31, 2007. *Id.* ALJ Dawson held the hearing, and he issued his opinion on April 11, 2008. *AR* at 19. In that opinion, he found that the claimant

suffered from the following severe impairments: "degenerative changes in cervical spine, C5/C6, marijuana abuse/opiod dependence; degenerative disc disease lumbar spine; hypertension; agoraphobia; and cluster B traits." *AR* at 15. He also found that Plaintiff had the residual functional capacity to perform light work "except that she can only have limited interactions with the public, co-workers, or supervisors. She cannot perform work outdoors." *AR* at 17. Although he found that Plaintiff could not perform past work, he denied benefits at step five based on testimony elicited from a Vocational Expert (VE) that an individual with the limitations given by the ALJ could still perform the duties of a laundry folder, assembler, and an advertising material distributor. *AR* at 19. The Appeals Council denied review on December 15, 2009, thereby rendering the ALJ's decision final. *AR* at 3.

In Plaintiff's Motion to Remand, Claimant asserts that the ALJ committed errors in his failure to attached a finalized exhibit list, credibility analysis, treatment of medical evidence, structure and content of the RFC, reliance on VE testimony, and application of the burden of proof. *Doc. 17*. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214. My assessment is based on a meticulous review of the entire record, where I can neither re-weigh the evidence nor substitute my judgment for that of the agency. *Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118.

Of the errors alleged, I find that the ALJ's failure to provide a function-by-function RFC was legal error and requires remand to the Commissioner for proper application of the legal standard at steps 4 and 5.

## II. Analysis

*HALLEX Exhibit List Requirement:*

First, Plaintiff argues that remand is appropriate because the ALJ failed to follow the HALLEX requirement to attach a detailed exhibit list to his decision. *Doc. 17* at 4-6. "HALLEX" is shorthand for the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual, and it is an internal Social Security Administration policy manual. *See e.g. Lockwood v. Commissioner Social Sec. Admin.*, 2010 WL 3211697, 3 (9th

Cir. 2010) While the ALJ did create an exhibit list, that list grouped the medical evidence together instead of enumerating the treatment notes & etc. individually, which Plaintiff asserts is error. *See doc. 17* at 4-6 and *AR* at 1-2. Plaintiff provides a policy argument to bolster her claim, but points to no law indicating to what degree (if any) HALLEX provisions are given the force of law. The Commissioner did not address Plaintiff's argument in his Response.

I agree with my colleagues, who have addressed this issue in *Jimenez v. Astrue*, CIV 08-0817, Doc. 18 (D.N.M. May 14, 2009) and *DeLeon v. SSA*, CIV 08-1120, Docs. 20, 21 (D.N.M. October 8, 2009 and November 4, 2009) that Plaintiff's argument lacks merit. When evaluating the authority of the Social Security Claims Manual, the Supreme Court held that it "is not a regulation, it has no legal force, and it does not bind the SSA." *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). The Tenth Circuit has not yet addressed whether the same conclusion should be applied to the HALLEX. The Ninth Circuit, however, has so held:

> The Commissioner, relying on *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), argues that HALLEX is a purely internal manual and as such has no legal force and is not binding. We agree.
> In order for HALLEX to have the force and effect of law, it must:
>
> > (1) Prescribe substantive rules-not interpretive rules, general statements of policy or rules of agency organization, procedure or practice-and, (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it

> must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.

*United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (internal citations and quotations omitted). It is clear that HALLEX does not provide substantive rules. "The starting point for determining if [an administrative manual] is substantive is its text." *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000). Section I-1-001 of HALLEX, entitled "PURPOSE," states in part that:

> Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff. HALLEX includes policy statements resulting from an Appeals Council en banc meeting under the authority of the Appeals Council Chair. It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels.

HALLEX I-1-001. The text of this section indicates that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law. Examining the specific provision at issue in the instant case, this provision creates no substantive rights; it merely provides OHA staff with internal procedures for assigning cases to ALJs after a remand. Further evidence that this is a purely internal manual can be seen in the fact that HALLEX was not published in either the Federal Register or the Code of Federal Regulations, indicating that the manual was not promulgated in accordance with the procedural requirements imposed by Congress for the creation of binding regulations and was not intended to be binding.

*Moore v. Apfel*, 216 F.3d 864, 868-869 (9th Cir. 2000); *see also Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008); *Lockwood v. Commissioner Social Sec. Admin.*, 2010 WL 3211697, 3 (9th Cir. 2010).

Although the Tenth Circuit has not decided this issue, it seems likely it will agree with the reasoning of the Ninth Circuit. When considering a manual of a different agency, the Tenth Circuit reasoned that:

> An agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (*per curiam*) (ruling a Social Security Claims Manual not binding on the government). This is particularly true if the agency did not intend the manual to be mandatory, but rather intended it as a guidance or advisory document.

*Aragon v. U.S.*, 146 F.3d 819, 824 (10th Cir. 1998)(some internal citations removed). Also, when addressing the authority of another internal SSA manual, the Program Operations Manual System (POMS), the Tenth Circuit held that the POMS should be given "controlling weight" but it is not legally binding. *Henningson v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 1999 WL 728061, 4 (10th Cir. 1999). Here, the only issue is whether the HALLEX is legally binding, not whether it is good policy, because Plaintiff has claimed the ALJ's failure to comply with the manual is remandable error. I find that it is not and therefore reject Plaintiff's HALLEX claim.

*Credibility:*

Plaintiff next argues that the ALJ's credibility determination was "erroneous." *Doc. 17* at 15. Specifically, in her motion Plaintiff argues that the ALJ's finding that "Ms. Mallory's complaints are 'not credible to the extent they are inconsistent with the

8

residual functional capacity assessment'" inappropriately collapsed the credibility finding into the RFC. *Doc. 17* at 15-17. The Commissioner did not address this claim in his Response. Instead, he asserted that the ALJ's credibility finding was appropriate because it was based on substantial evidence, and then he listed the relevant factors the ALJ explicitly discussed. *Doc. 18* at 4-6. Plaintiff's Reply adds new arguments: it suggests that the ALJ's conclusion is invalid because he failed to discuss certain factors (those mentioned in the Response) "in any meaningful fashion," *Doc. 19* at 1, that he misstated that Plaintiff's TENS unit brought her relief, and that his consideration of Plaintiff's illegal drug history and subsequent inability to obtain legitimate narcotics and her conviction for child endangerment were inappropriate grounds for a finding of diminished credibility. *Doc. 19* at 1-2. I find no error in the ALJ's credibility determination and therefore do not remand on this issue.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Boilerplate language is insufficient. *E.g., id.; see also, e.g., Carpenter v. Astrue,* 537 F.3d 1264, 1266-70 (10th Cir. 2008); *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004). Instead, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,*

9

68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and brackets omitted).

However, the Tenth Circuit does not "reduce[] credibility evaluations to formulaic expressions" and it "'does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'" *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)).

Where pain is alleged, the onus is first on the Claimant to demonstrate that she has a pain-producing ailment that has at least some likelihood of causing the alleged subjective complaints of pain.

> The framework for proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 831 F.2d 161 (10th Cir. 1987). We must consider: (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Branum v. Barnhart,* 385 F.3d 1268, 1273 (10th Cir. 2004). Also,

> [w]hen determining the credibility of pain testimony, the ALJ should consider such factors as, "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Thompson v. Sullivan*,  987 F.2d 1482, 1489 (10th Cir. 1993)(citing *Hargis v. Sullivan*, 945

F.2d 1482, 1489 (10th Cir. 1991)).  In relevant part, SSR 96-7p also notes that the ALJ should consider "[f]actors that precipitate and aggravate symptoms," and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7p.

   *A. The ALJ Did Not Conflate the RFC and Credibility Determinations*

   In her motion, Plaintiff asserts that the ALJ inappropriately conflated the credibility and RFC determination.  *Doc. 17* at 16.  In support of her contention, she cites a Tenth Circuit opinion that held:

> An ALJ's finding regarding the claimant's noncredibility does not compel a finding of not disabled. Rather, the credibility determination is just a step on the way to the ultimate decision. The ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis.

*Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).  The ALJ here, however, did not conflate the two determinations.  The ALJ began his credibility discussion five paragraphs after he stated the RFC.  *See AR* at 17.   Moreover, The RFC was determined at Step 4, and the Plaintiff was not found to be disabled until Step 5.

   Plaintiff also states: "The ALJ found that Ms. Mallory's complaints are 'not credible to the extent they are inconsistent with the residual functional capacity assessment. . . .'  That reasoning is contrary to 96-7p, and to case law."  *Doc. 17* at 16.  Plaintiff does not explain what part of the reasoning is fallacious, what case law

11

supports her contention, or what part of 96-7p she feels was violated.  The Court's own review of SSR 96-7p suggests that the passage Plaintiff quoted from the ALJ decision *is* valid:

> The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. For example, an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms; i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged.

SSR 96-7p.  Here, the ALJ found Plaintiff credible but only to the extent consistent with the RFC, which he had already explained allowed for Plaintiff to perform light, indoor work "except that she can only have limited interactions with the public, co-workers, or supervisors."  *AR* at 17.  Thus, Plaintiff has pointed the Court to no law, and the Court finds none, that suggests there was a structural flaw with the ALJ's credibility determination.

   *B. The Credibility Determination Comported with the Correct Legal Standards and is Supported by Substantial Evidence.*

   Plaintiff appears to argue generally that the ALJ's finding of little credibility was not based on substantial evidence.  *See Doc.* 19.  The parties do not appear to contest that Plaintiff met her burden of demonstrating that the first two *Luna* steps were met.  Thus, if they disagree about the *Luna* analysis at all, they disagree about the legitimacy of the

conclusion the ALJ drew at step three. Because I find that the ALJ's credibility determination comports with the legal standard and is supported by substantial evidence, I will not remand on this issue.

The ALJ's credibility analysis begins on page 17 of the Administrative Record and ends on page 18. It includes a discussion of some of the factors laid out in *Thompson* and SSR 96-7p. The ALJ considered Plaintiff's levels of medications and effectiveness: he stated that "her pain has been controlled through the use of medications and TENS unit." *AR* at 17. He also considered "[f]actors that precipitate and aggravate symptoms,"[2] when he noted that "several times the claimant has taken herself off of her medications," and the fact that, despite Plaintiff's ongoing struggles with mental health, she continued her illegal drug abuse. *AR* at 17; SSR 96-7p. He also stated, "[b]ecause of the claimant's history of illegal drug use and felony conviction she has little credibility." *AR* at 18.

The bulk of Plaintiff's argument for this claim is found in her Reply brief, where she asserts that the ALJ did not address the relevant credibility factors "in any meaningful fashion," that he misstated that Plaintiff's TENS unit brought her relief, and that he inappropriately considered Plaintiff's criminal record and illegal drug use,

---

[2] The ALJ may consider "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p.

which were irrelevant. *Doc. 19* at 1-2. As these arguments were not in Plaintiff's Motion, but only in her Reply, Defendant never had the opportunity to respond to them. In the Commissioner's Response, however, Defendant argues simply that the credibility determination should stand because it is supported by substantial evidence. *Doc. 18* at 4-6.

Plaintiff's arguments are unpersuasive. She cites a Tenth Circuit opinion for her proposition that the ALJ failed to discuss any credibility factors "meaningfully," but in that case the ALJ completely failed to discuss why he found the claimant not credible. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). The court held that therefore, the ALJ's "findings as to credibility [were not] closely and affirmatively linked to substantial evidence and [were] just a conclusion in the guise of findings." *Id.* (quoting *Kepler v. Charter*, 68 F.3d 387, 391 (10th Cir. 1995)). In the instant case, however, the ALJ gave several reasons for his finding of limited credibility. *AR* at 17-18.

Next, Claimant argues that the ALJ's reliance on his erroneous conclusion that the TENS unit helps to control Claimaint's pain is legal error. *Doc. 19* at 1-2. Plaintiff argues that the record, in fact, demonstrates that the TENS unit did not bring Plaintiff relief, and points to two treatment notes from the University Hospital in early 2005. *Id.* The record does show that in early March of 2005, Plaintiff twice reported to her health

14

care providers that she received little or no relief from her TENS unit. *See AR* at 387, 391. In the latter of those two meetings however, the provider suggested the TENS unit may have been broken or malfunctioning when he indicated: "Her only issue is that she needs new wires for her TENS unit." *AR* at 387. Indeed, in May of 2005, only a couple of months later, Plaintiff's treatment notes reflect a different sentiment. There, the treatment provider noted: "Activities which decrease symptoms: Symptoms are better with a TENS Unit application, massage and hot pack." *AR* at 382. Moreover, as noted by the ALJ, in April of 2007, Plaintiff was given another prescription for a TENS unit. *AR* at 16, 178. Of course, it would have been best if the ALJ had cited the record when making his finding that the TENS unit helped to control Plaintiff's pain. Nonetheless, I find his conclusion supported by substantial evidence and will not re-weigh the evidence here.

Finally, Plaintiff argues that the ALJ inappropriately considered Plaintiff's history of drug abuse and child endangerment conviction when deciding Plaintiff had little credibility. *Doc. 19* at 2. Plaintiff provided no law indicating that consideration of those factors was error. Defendant's Response included a cite to an Eighth Circuit case that held that illegal activity may be considered when determining a claimant's credibility, but in that case the illegal activity was forgery, which is a crime of dishonesty. *See Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001). Regardless,

even if it was inappropriate for the ALJ to consider Plaintiff's history of illegal drug use and child endangerment, the Tenth Circuit has held that where the balance of the credibility determination includes legitimate reasons, the determination will stand:

> While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record. In particular, it appears that plaintiff has not made any extensive attempts to obtain relief for her back pain, as the medical contacts regarding her back pain have been infrequent.

*Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).

As in *Branum*, the balance of the ALJ's credibility analysis includes legitimate reasons. The ALJ noted that, although Plaintiff had pain, that pain was controlled through use of medications and a TENS unit. *AR* at 17; *See also AR* at 141-42 (Plaintiff's testimony that her medications help with her pain); *AR* at 178, 382 (treatment notes that support the ALJ's conclusion that Plaintiff's TENS unit helps control her pain). The ALJ also considered "the fact that several times the claimant has taken herself off of her medications." *AR* at 17. Failure to treat is generally a legitimate consideration for a credibility determination, *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000), and Plaintiff has not argued an exception. Thus, I find that substantial evidence supports the ALJ's credibility determination.

*Structural Inadequacy of the RFC:*

In the section of her motion devoted to credibility arguments, Plaintiff also contends that the RFC was structurally flawed because it did not provide a function-by-function analysis as required by SSR 96-8P. *Doc. 17* at 16. Although Defendant addresses Plaintiff's attack on the sufficiency of the RFC generally, he does not address Plaintiff's contention that the ALJ failed to give a funtion-by-function RFC. *See doc. 18* at 6-10. Because I agree that the ALJ had a duty to provide a function-by-function RFC and failed to do so, I will remand.

> SSR 96-8P provides, in pertinent part:
>
> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8P. It goes on to explain:

> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
> . . . .
> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking,

> lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull").

*Id.*

Though Social Security Rulings do not carry the force of law, they are generally entitled to deference. *See Fagan v. Astrue*, 231 F. App'x 835, 837 (10th Cir. 2007). Moreover, these particular requirements of SSR 96-8P have been endorsed by the Tenth Circuit in several unpublished opinions. *See Alexander v. Barnhart*, 74 F. App'x 23, 28 (10th Cir. 2003); *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003); *Diggdon v. Apfel*, 1999 WL 617702, 2-3 (10th Cir. 1999); *Hodgson v. Apfel*, 1999 WL 46689, 4 (10th Cir. 1999).

For example, the Court in *Southard* found that the RFC at issue was inadequate because it lacked a function-by-function assessment. It then reasoned as follows:

> A proper RFC assessment "must address both the remaining exertional and nonexertional capabilities of the individual." [SSR 96-8p]. Each of the seven strength demands must be considered separately. *Id.* In this case, after concluding plaintiff retained an RFC for light work, the ALJ made specific findings only as to the amount of weight plaintiff could lift or carry and did not separately address plaintiff's ability to sit, stand, walk, push, or pull, except to note plaintiff's need for "an assistive device in the dominant right hand for most ambulation," the need to avoid repetitive bending and torso twisting, and the need to only occasionally operate foot pedals and "to intermittently alternate sitting and standing positions for a few minutes 1-2 times an hour." Aplt. App. at 36. There is no discussion of "the maximum amount of each work-related activity [plaintiff] can perform," nor is there any "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and

nonmedical evidence." SSR 96-8p, 1996 WL 374184 at *7 (emphasis added).

*Southard*, 72 F. App'x at 784.

Similarly, the *Diggdon* Court found as follows:

"The RFC assessment "must not be expressed initially in terms of the exertional categories of "sedentary [or] light;" rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC. [SSR 96-8p.] ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations of restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").
     Here, the ALJ simply made the conclusory determination at the first phase of step four that claimant could perform light work that would allow her to change her position at will. . . .  In evaluating claimant's RFC at the first phase of step four, the ALJ failed to assess her ability to perform each of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling); to discuss her ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis; and to carefully compare her restrictions with the functional demands of light work as defined by the regulations.

*Diggdon v. Apfel,* 1999 WL 617702, 2 -3 (C.A.10  (C.A.10 (Okla.),1999

Here, the ALJ's RFC reads simply: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can only have limited interactions with the public, co-workers, or supervisors.  She cannot perform work outdoors."  *AR* at 17.  There are several structural problems with this RFC.  The ALJ expressed the RFC initially "in terms of exertional categories," failed to offer a

19

function-by-function analysis of Claimant's remaining capabilities, and failed to consider any of the seven strength demands.  Thus, I find this issue dispositive and remand to the ALJ for further proceedings consistent with this order.

### III. Conclusion

Plaintiff also claims that the ALJ erred when he:  (1) failed to discuss Dr. Chiang's findings of moderate mental limitations; (2) failed to discuss Dr. Chiang's finding of temporary disability; (3) failed to include a sit/stand option and concentration limits in the RFC; (4) misstated the burden of proof at step 5; (5) failed to convey all of Claimant's limitations to the VE; and (6) relied on VE testimony that Claimant could perform three jobs when all three were precluded by Claimant's limitations.  *Doc. 17*.  Because the step 4 error herein discussed is dispositive of remand, however, this Court need not and does not reach those arguments.

Wherefore, IT IS HEREBY ORDERED THAT Claimant's Motion to Remand be granted and the action be remanded to the Commissioner to properly perform the step 4 and 5 analyses.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent